FILED
11/23/2020 10:29 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Martha Medellin

CUASE NO. _____

| | | |
|---|---|---|
| LETICIA SANCHEZ,<br>*Plaintiff,* | § § § | IN THE DISTRICT COURT |
| V. | § § § | 45th JUDICIAL DISTRICT |
| BEXAR COUNTY SHERIFF'S OFFICE<br>BEXAR COUNTY, TEXAS,<br>*Defendant.* | § § § § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT

NOW COMES Leticia Sanchez, ("hereinafter called Plaintiff"), complaining of and about BEXAR COUNTY SHERIFF"S OFFICE A DEPARTMENT OF BEAR COUNTY GOVERNMENT (hereinafter called "Defendant or Bexar County"), and for cause of action show unto the Court the following:

### I.
### DISCOVER CONTROL PLAN

1. Plaintiff intends to conduct discovery under Level 3, pursuant to Rule 190.4 for the Texas Rules of Civil Procedure.

### II.
### SUMMARY

2.1 On or about April 22, 2020 Plaintiff filed an U.S. Equal Employment Opportunity Commission (hereinafter, "EEOC") Charge of Discrimination against the Bexar County Sheriff's

Office a Division of Bexar County—Government of Bexar County, Texas for discrimination suffered discrimination on the basis of sex, age, religion, and disability, as well as retaliation under the Age in Employment Discrimination Act of 1976, and Title VI of the Civil Rights Act of 1964.

2.2     On or about August 21, 2020 the EEOC sent a Dismissal and Notice of Rights Letter with a "unable to conclude and the right to sue" letter attached hereto as Exhibit A..

## III.
## PARTIES

3.1     Plaintiff, Leticia Sanchez, is an individual, that is citizen of the State of Texas.

3.2     Defendant, Bexar County Sheriff's Office, a Division of Bexar County—Government of Bexar County, Texas, a governmental organization of a state county government, which may be served by delivering a copy of the summons and of the complaint to the chief executive officer. Defendant, Bexar County Sheriff's Office, a Division of Bexar County—Government of Bexar County, Texas, a county in Texas, may be served with process by serving the county judge, Honorable Nelson Wolfe, at 100 Dolorosa, San Antonio, TX 78205, under the authority of Texas Civil Practice & Remedies Code section 17.024(a).

## IV.
## JURISDICTION AND VENUE

4.1     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this civil action arises under the Constitution, laws, or treaties of the United States; specifically, Age in Employment Discrimination Act of 1976, and Title VI of the Civil Rights Act of 1964.

4.2     Venue is proper in the Western District of Texas, San Antonio Division, pursuant to 28 U.S.C. § 1391(b), or concurrent jurisdiction with Bexar County District Court because a substantial

part of the events or omissions giving rise to the claims herein occurred in this District and Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practice was committed in this state.

## V.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.1     Plaintiff timely filed a charge of discrimination against defendant with the Equal Employment Opportunity Commission (EEOC). Plaintiff files this complaint within 90 days after receiving a notice of the right to sue from the EEOC. A copy of the notice of the right to sue is attached as Exhibit "A".

## VI.
## FACTS / FACTUAL ALLEGATIONS

**THE LEGAL THEORIES AND FACTUAL BASIS IN THIS MATTER WHICH ARE CONTAINED AND INCORPORATED IN THE EEOC FORMAL COMPLAINT AS IF ATTACHED HEREIN; TO INCLUDE BUT NOT LIMITED TO: CLAIMANT AND ALL PREVIOUS STATEMENTS, AFFIDAVITS AND DOCUMENTS PROVIDED IN EEOC CHARGE 451-2020-02522 BY OR THROUGH CLAIMANT OR RESPONDENT.**

6.1     Plaintiff, Leticia Sanchez is an employee within the meaning of Title VII and the American Disabilities Act and belongs to a class protected under the statute, namely an employee subject to the civil service laws of a State government, governmental agency or political subdivision. Plaintiff's job title was Ms. Sanchez was a supervisor titled, Public Safety Communications Supervisor, within the BCSO's Public Safety Communications Center (PSCC). Plaintiff was employed by the Defendant on or about April 21, 1999 and has worked for Defendant for approximately twenty-one (21) years.

6.2     During that time since Ms. Leticia Rogers (her first line supervisor) and plaintiff had developed a good working relationship and a good friendship for about 15 years she knew that plaintiff's religious meeting were extremely important to her and since she attained a senior

supervisor level she had choice of shift and relief days, which plaintiff would choose the first shift (1st) between seven o'clock (7:00 a.m.) through three o'clock p.m. (3:00 p.m.) with Sunday and Monday off. This schedule accommodated plaintiff's religious lifestyle of Sunday worship and her accommodations for health and religious purposes. Leticia Rogers knew that moving plaintiff to second shift would interfere with my religious meetings. Plaintiff had made her health concerns known to her immediate supervisor (Ms. Leticia Rogers) throughout the years, such as diabetes, high blood pressure, carpal tunnel, arthritis and menopause. Throughout plaintiff's twenty plus years working for defendant medical issues where being handled with medication or surgery for the carpal tunnel and informally handled at a departmental level. Moreover, plaintiff noticed that the young male supervisors were always treated with more respect when Lt. von Muldau would interact or talk to them and take their suggestions even though she was the one with the most experience. He would blow me off the plaintiff and dismissed her thoughts or suggestions did not matter. Lt. von Muldau made it a point to make sure the plaintiff knew she did not matter.

6.3    On or about the month of March 2019, which coincidences with Lt. Aaron von Muldau being placed in the civilian department, plaintiff began to be the target of harassment and discriminatory practices. This is the same period that Ms. Leticia Roger made comments to plaintiff encouraging her to think about retiring or finding another job. In which caused the plaintiff finally to stop telling her plaintiff's medical problems. Lt. von Muldau and acting Manager Leticia Rogers, collectively called plaintiff into the office. During the meeting she was told that the department had received complaints against plaintiff from staff, and after plaintiff repeatedly asking to see the complaints, she was told she do not have the right to see them. At the end of the meeting Lt. von Muldau told plaintiff that her authority as a supervisor had been removed and she was not to have interaction with the staff only when no other supervisor was

around, but even at that try to limit the contact. Plaintiff was directed to do the schedules for all three shifts. Plaintiff asked for direction in what exactly she was to do. and she requested that it be put in writing. They ignored the request and gave plaintiff no direction. For several months, the plaintiff heard nothing from the department.

6.4    Then on or about August 24, 2019, which was a Saturday, and no other Supervisors were on duty plaintiff addressed a Deputy that was loitering on the floor and distracting one of the Dispatchers. He and plaintiff got into a heated conversation, which plaintiff reported to Lt. von Muldau and Leticia Rogers. Then on or about August 28. 2019, plaintiff after being berated and called names such as a. "pain in the ass", an "ineffective supervisor", and harassed by Lt. von Muldau in the presence of Leticia Rogers he told plaintiff he was moving me to second (2nd shift) which is three o'clock p.m. (3:00 p.m.) to eleven o'clock p.m. (11:00 p.m.) with Friday as Saturday as plaintiff's days off. At such meeting Plaintiff asked Lt. von Muldau if she still retained all Supervisory duties on 2nd shift, he said, "yes you will" I again asked him "all of them," he said "Yes all of them". This plaintiff feels was done arbitrarily and capriciously since the Civil Service Rules were not adhered to and instead was strategic move for defendant because defendant's leadership knew that she would not accept that shift and the demotion creating a constructive discharge.

6.5    Plaintiff then responded that she wanted to speak to Chief Bennett, but he said plaintiff would have to talk to Captain Schuler, so as to follow the chain of command to which plaintiff acknowledged and said fine. He then proceeded to threaten plaintiff or try to intimidate her by saying "Are you sure you want to go down that road with me?" to which plaintiff said "you are not giving me any choice. you are messing with my life by disrupting my schedule and moving me from my shift that I have earned and moving me without any just cause. This type of disciplinary

action is not a practice in a civilian department we did not disrupt an employees life by moving them to another shift just to mess with them. We are professionals and followed Civil Service guide lines and the Sheriff's Policy and Procedures. which is progressive disciplinary action in written form. I had no disciplinary paperwork".

6.6 On or about August 30, 2019, plaintiff had my meeting with Captain Schuler in the presence of Lt. von Muldau and Leticia Rogers, which should have been just her and Captain Schuler again attempted to intimidate the plaintiff. During this meeting they mentioned reports against plaintiff, and plaintiff asked to see them, and Captain Schuler advised her that she could not see them.

6.7 On or about September 04, 2019 Captain Schuler decided to go a different way and move me completely out of dispatch and put me on Administrative Leave without reason.

6.8 On or about November 26, 2019 plaintiff was served with a notice of proposed demotion and on December 18, 2019, plaintiff had her "Loudermill hearing" with now new Chief Shuler in the presence of Laura Milam again plaintiff asked to see the reports he said no then he said for her to email Laura Milam and ask for them-plaintiff did exactly that and yet never received anything.

6.9 December 31, 2019 Plaintiff received an email from Laura Milam stating Chief Shuler was offering a ten (10) day suspension. Plaintiff decided she could not take that offer because she would have been admitting to the false allegations and statement on the proposed noticed of demotion. and then they would have disciplinary paperwork in the file. Plaintiff instead plaintiff hired an attorney to assist in the protection of her civil service rights.

6.10 On or about February 14, 2020 plaintiff and her then legal counsel had a meeting with Chief Deputy Ricardo Esqueda. On or about February 21. 2020, plaintiff and her legal counsel received Ricardo Esqueda decision of upholding the decision to demote plaintiff.

6.11    On or about March 12, 2020 plaintiff and her legal counsel had a meeting with Chief Deputy James Serrato. He to upheld it.

6.12    Defendant, by taking away plaintiffs supervisory duties without any corrective or disciplinary written paperwork and not following up Bexar County Service Rules were discriminatory in nature and intended to cause the plaintiff to retire rather than continue to face additional harassment and discriminatory practices which plaintiff claims her civil service rights were violated. Plaintiff's chain of command failed to abide not only defendant's own Sheriff's Manual Policy and Procedure but also dismissed Bexar County's Civil Service Rules/Laws. Plaintiff was forced to retire because it was a significant decrease in pay and fringe benefits if she would have taken the position of dispatcher she would have been subjected to work in a hostile environment. Further, plaintiff was going to have to be re-trained as a dispatcher and her performance would have been scrutinized by Management that had already lied to get her demoted; plus against plaintiff would be accepting defendant's false allegations.

## VII.
### DISCRIMINATION UNDER TITLE VII

**THIS SECTION IS INDICATED AND SUPPORTED BY SECTION TITLED "FACTUAL ALLEGATIONS" ABOVE AND WITHIN THIS COMPLAINT AND INCORPORATED HEREIN BY REFERENCE TO SUPPORT PLAINTIFF'S CAUSES OF ACTION**

7.1    Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely an employee subject to the civil service laws of a State government, governmental agency or political subdivision. Plaintiff's job title was Ms. Sanchez was a supervisor titled, Public Safety Communications Supervisor, within the BCSO's Public Safety

Communications Center (PSCC), which is responsible for fielding emergency and non-emergency calls from the public and dispatching appropriate law enforcement and public safety personnel. Call takers and dispatchers within the Center are responsible for answering emergency and non-emergency calls from the public, entering call information into a computerized database, assigning calls a priority level and routing them to dispatchers with law enforcement and public safety agencies, and operating computer-aided dispatch and mapping systems, among other duties. Supervisors are responsible for overseeing the operations of the PSCC; supervising, evaluating, and counseling dispatchers; coordinating dispatcher training; responding to citizen complaints related to the Center; liaising with other BCSO departments; and other similar supervisory duties.

7.2    Defendant is an employer within the meaning of Title VII, is engaged in an industry affecting commerce, and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. The Defendant has more than five hundred employees.

7.3    Ms. Leticia Rogers, Lieutenant Aaron von Muldua, and Deputy Chief Roland P. Schuler, plaintiff's supervisors are employed by the defendant as supervisors in the Sheriff's Office.

7.4    Plaintiff's supervisors were empowered by defendant to take tangible employment actions against plaintiff. As senior supervisor's the defendant's employees as supervisory authority over plaintiff, to include but not limited to 1) the authority to fire plaintiff, 2). the authority to reassign plaintiff to a position with significantly different responsibilities, the authority to significantly alter plaintiff's benefits. Defendant's employees ultimately did those very things by demoting the plaintiff and causing her to resign and retire rather then suffer continued harassment.

7.5    Defendant intentionally discriminated against plaintiff because of her race, color religion, sex in violation of Title VII by Defendant, by taking away plaintiffs supervisory duties without

any corrective or disciplinary written paperwork and not following up Bexar County Service Rules were discriminatory in nature and intended to cause the plaintiff to retire rather than continue to face additional harassment and discriminatory practices which plaintiff claims her civil service rights were violated. Plaintiff's chain of command failed to abide not only defendant's own Sheriff's Manual Policy and Procedure but also dismissed Bexar County's Civil Service Rules/Laws. Plaintiff was forced to retire because it was a significant decrease in pay and fringe benefits if she would have taken the position of dispatcher she would have been subjected to work in a hostile environment. Further, plaintiff was going to have to be re-trained as a dispatcher and her performance would have been scrutinized by Management that had already lied to get her demoted; plus again plaintiff would be accepting defendant's false allegations.

7.6     Defendant used the following discriminatory employment practices, policies, and rules in violation of Title VII: Plaintiff's chain of command failed to abide not only defendant's own Sheriff's Manual Policy and Procedure but also dismissed Bexar County's Civil Service Rules/Laws. Although these practices, policies, and rules appear to be neutral, they serve to discriminate against a disproportionate number of persons of plaintiff's religion sex and age.

7.7     Defendant and defendant's employees created a hostile work environment through its discriminatory words and actions towards plaintiff because of plaintiff's religion, sex, and age. This conduct was so severe that it altered the terms and conditions of plaintiff's employment and interfered with plaintiff's work performance and thereby created an intimidating, hostile, and offensive work environment.

7.8     Defendant is directly liable because it was negligent in discovering and remedying the discriminatory conduct. Defendant intentionally discriminated against plaintiff because of her race, religion, and sex in violation of Title VII by Defendant, by taking away plaintiffs supervisory

duties without any corrective or disciplinary written paperwork and not following up Bexar County Service Rules were discriminatory in nature and intended to cause the plaintiff to retire rather than continue to face additional harassment and discriminatory practices which plaintiff claims her civil service rights were violated. Plaintiff's chain of command failed to abide not only defendant's own Sheriff's Manual Policy and Procedure but also dismissed Bexar County's Civil Service Rules/Laws. Plaintiff was forced to retire because it was a significant decrease in pay and fringe benefits if she would have taken the position of dispatcher she would have been subjected to work in a hostile environment.

7.9   Defendant is strictly liable for defendant's employee's discriminatory conduct because defendant and defendant's employees took a tangible employment action against plaintiff that significantly changed plaintiff's employment status. This ultimately led to plaintiff being reassigned with significantly different responsibilities and plaintiff's benefits were significantly changed ultimately with plaintiff being forced to retire.

7.10   Defendant is vicariously liable for defendant's employee's discriminatory conduct. Defendant did not exercise reasonable care to prevent and promptly correct the discriminatory conduct, even though plaintiff took advantage of defendant's measures designed to prevent and correct discriminatory conduct.

## VIII.
## AMERICANS WITH DISABILITIES ACT

8.1   Plaintiff is disabled, as defined by the Americans with Disabilities Act (ADA). Plaintiff had made her health concerns known to her immediate supervisor, Ms. Leticia Rogers, throughout the years, such as diabetes, high blood pressure, carpal tunnel, arthritis, and menopause. Throughout plaintiff's twenty plus years working for defendant medical issues where being

handled with medication or surgery for the carpal tunnel and informally handled at a departmental level Plaintiff is otherwise qualified to perform the essential functions of Public Safety Communications Supervisor, within the BCSO's Public Safety Communications Center (PSCC).

8.2    Plaintiff is an employee within the meaning of the ADA.

8.3    Defendant is an employer within the meaning of the ADA, is engaged in an industry affecting commerce, and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

8.4    Defendant violated the ADA by intentionally discriminating against plaintiff on the basis of her disability. Defendant's discriminatory acts include denial of promotion, constructive discharge.

## IX.
## DENIAL OF DUE PROCESS AND EQUAL PROTECTION

9.1    Defendant, a governmental violated Plaintiff's Due Process and Equal Protection as a County Employee protected by Civil Service Rules and Statutes.

## X.
## DAMAGES

10.1    As a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages.

    a.    Plaintiff was demoted from Public Safety Communications Supervisor, within the Bexar County Sheriff's Office's (BCSO) Public Safety Communications Center (PSCC)to dispatcher resulting in lost pay and benefits;

    b.    Plaintiff was constructively discharged from employment with defendant. Although plaintiff has diligently sought other employment, she has been unable to find a job at comparable pay. In addition, plaintiff has incurred expenses in seeking other

employment and has had to pay for medical treatment that otherwise would have been covered by the health benefits plan offered by defendant;

c. Plaintiff suffered loss of her pension or retirement benefits;

d. Plaintiff seeks compensation for all lost wages and benefits, including loss of Social Security benefits. Reinstatement of plaintiff in her previous position is impractical and unworkable. Therefore, plaintiff seeks an award of front pay and retirement benefits to compensate he applicable: up to the mandatory retirement age of sixty-five (65) years old;

e. Plaintiff suffered mental anguish and emotional distress to the requirement of psychological therapy;

f. Plaintiff suffered physical illness in the form of exacerbation of diabetes, extensive weight gain, extreme anxiety requiring medication, loss of sleep and hair loss;

g. Reasonable attorney's fees, costs and expenses of this action, including expert witness costs;

h. Pre-judgment and post-judgment interest at the highest rates allowed by law;

i. Plaintiff seeks damages in an amount that is within jurisdictional limits of court; and

j. Such other and further relief, at law or in equity, as this Honorable Court may find proper.

## XI.
## ATTORNEY FEES AND COSTS

11.1 Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. § 2000e-5(k) and the ADA.

## XII.
## PRAYER

12.1 For these reasons, plaintiff asks for judgment against defendant for the following:

    a.    affirmative action to hire, reinstate, or promote plaintiff;

    b.    back pay;

    c.    front pay;

    d.    compensatory damages;

    e.    Punitive damages;

    f.    c. prejudgment interest on lost wages and benefits and postjudgment interest on all sums, including attorney fees;.

    g.    for reasonable attorney fees;

    h.    Costs of suit;

    i.    All other relief the Court deems appropriate.

Respectfully submitted,

DIAZ JAKOB, LLC
Alamo Towers West
901 N E Loop 410, Suite 900
San Antonio, Texas 78209
Tel.: (210) 226-4500
Fax: (210) 226-4502
Email: JJJ@diazjakob.com

By: _____
JASON J. JAKOB
State Bar No.: 24042933
Attorney for Plaintiff, Leticia Sanchez

CUASE NO. _____

| | | |
|---|---|---|
| LETICIA SANCHEZ,<br>　　*Plaintiff,* | §<br>§<br>§ | IN THE DISTRICT COURT |
| V. | §<br>§ | _____ JUDICIAL DISTRICT |
| BEXAR COUNTY SHERIFF'S OFFICE<br>BEXAR COUNTY, TEXAS,<br>　　*Defendant.* | §<br>§<br>§<br>§ | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

# EXHIBIT A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION DISMISSAL AND NOTICE OF RIGHTS

EEOC Form 161 (11/16)　　　　　　　　**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Leticia Sanchez<br>4614 Dellcrest Drive<br>San Antonio, TX 78220 | From: | San Antonio Field Office<br>5410 Fredericksburg Rd<br>Suite 200<br>San Antonio, TX 78229 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 451-2020-02522 | Hector Colon-Padro,<br>Investigator | (210) 640-7546 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____　　　8/21/2020
Travis G. Hicks,　　　　　　　　　　　　(Date Mailed)
Director

Enclosures(s)

cc:
Brad Bennett, Esq.　　　　　　　　　　　　Adam Poncio, Attorney
Assistant District Attorney Chief - Civil Section　　5410 Fredericksburg Road, Ste. 100
BEXAR COUNTY　　　　　　　　　　　　San Antonio, Texas 78229
101 W. Nueva St.
7th Floor
San Antonio, TX 78205

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.