IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LETICIA SANCHEZ, | § | |
| *Plaintiff*, | § | 5-21-CV-00018-OLG-RBF |
| vs. | § | |
| BEXAR COUNTY TEXAS, | § | |
| *Defendant*. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando Garcia:**

This Report and Recommendation concerns the Motion to Dismiss Plaintiff's First Amended Complaint, filed by Defendant Bexar County, Texas. *See* Dkt. No. 17. All pretrial matters in this action have been referred for resolution pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 24. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, the Motion, Dkt. No. 17, should be **GRANTED**, and all claims filed by Plaintiff Leticia Sanchez against Defendant Bexar County should be **DISMISSED**.

**Factual and Procedural Background**

Plaintiff Leticia Sanchez, a former Public Safety Communications Supervisor for the Bexar County Sheriff's Office (BCSO), sued Bexar County for various types of employment-related harassment, discrimination, and retaliation she allegedly suffered from March 2019 until her 2020 demotion.

1

In her original state court Petition, Sanchez raised claims against the County as well as the BCSO for (1) race, religion, and sex discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) disability discrimination in violation of the Americans with Disabilities Act (ADA); and (3) violation of her rights to due process and equal protection "as a County Employee protected by Civil Service Rules and Statutes." Dkt. No. 1. After timely removing the case, Defendants moved to dismiss Sanchez's claims pursuant to Rules 12(b)(1) and 12(b)(6). *See* Dkt. No. 3. The District Court granted Defendants' motion to dismiss in an Order dated March 30, 2021, but the Court granted Sanchez an opportunity to amend her pleadings but only with respect to her claims against the County.[1] *See* Dkt. No. 9.

In its dismissal Order, the District Court permitted Sanchez to file an amended compliant to address various pleading deficiencies identified in the Order. Sanchez timely filed an amended complaint.[2] The County now again moves to dismiss.

The Court looks to the live Complaint, in this motion-to-dismiss posture, to provide the relevant factual background for purposes of evaluating the motion. The Complaint explains that Sanchez—a 55-year-old Hispanic female—is a former 21-year veteran with the BCSO. She most recently held the position of Public Safety Communications Supervisor. *See* 1st Amend. Compl. ¶ 5.1 (Dkt. No. 16). Having attained senior supervisor status, Sanchez (during the relevant time) worked her preferred "first shift" of 7 a.m. to 3 p.m. Tuesday through Saturday with Sunday and Monday off. *See id.* ¶ 5.2. This weekly schedule, according to Sanchez, accommodated her

---

[1] Because BCSCO is a governmental subdivision without the capacity to sue or be sued, Sanchez's claims against it couldn't be remedied.

[2] The record reflects that Sanchez timely filed her amended complaint on May 19, 2021—the Court-ordered deadline. *See* Dkt. No. 13. But the Clerk issued a deficiency notice for failure to first seek leave to amend. No such motion, however, was necessary pursuant to the District Court's prior order. In any event, Sanchez sought leave to amend on May 20, 2021, which the District Court granted. *See* Dkt. No. 15; May 24, 2021 text order.

religious lifestyle of Sunday worship. *See id.* Sanchez's first-line supervisor Leticia Rogers—with whom Sanchez shared a "good working relationship and a good friendship"—was aware of the religious importance of this shift to Sanchez. *See id.* And in light of their friendship as well as the fact that Department internally handled any "medical issues," Rogers, according to Sanchez, was also aware of Sanchez's various health-related ailments, including diabetes, high blood pressure, carpal tunnel syndrome, arthritis, and menopause. *See id.*

Sanchez worked the majority of her tenure with the BCSO without incident. In or about March of 2019, however, Sanchez "began to be the target of harassment and discriminatory practices" when Lieutenant Aaron von Muldau transferred into the civilian department and was placed in charge of Sanchez. *Id.* ¶ 5.3. According to Sanchez, Muldau always treated young male supervisors with greater respect than the more experienced Sanchez. *See id*. ¶ 5.2 Sanchez further claims Muldau was dismissive of her thoughts and suggestions, and he even "made it a point to make sure [Sanchez] knew that she did not matter and [Muldau] wished her retired." *Id.* During this same period, Rogers began encouraging Sanchez to think about retiring or finding another job. *See id.* ¶ 5.3 She also instructed Sanchez to stop sharing her medical problems. *See id.*

On or about August 28, 2019, Muldau and Rogers informed Sanchez at a meeting that various staff members had lodged complaints about her, although Muldau and Rogers wouldn't permit Sanchez to review the complaints. *See id.* At the meeting's conclusion, Muldau told Sanchez that her supervisory authority had been revoked, and he further instructed Sanchez to "do the schedules for all three shifts" with little to no direction regarding what that entailed. *See id.* Sanchez then "heard nothing" from the Department for several months. In Sanchez's

estimation, Muldau's vague unwritten instructions were "setting [her] up for failure." Sanchez Aff. ¶ 9.[3]

Then, in August 2019, Sanchez had a "heated conversation" with a BCSO deputy who was loitering on the floor and distracting a dispatcher. *See* 1st Amend. Compl. ¶ 5.4. In response, Muldau berated Sanchez and called her names, such as "pain in the ass" and "ineffective supervisor." *Id.* Muldau also assigned Sanchez to work the "second"—and Sanchez's non-preferred—weekly shift of 3 p.m. to 11 p.m. Sunday through Thursday, with Friday and Saturday off. *Id.* But he reinstated Sanchez's supervisory duties. *Id.*

Believing the shift reassignment was effected "arbitrarily and capriciously" and without regard to the pertinent civil-service rules and appropriate disciplinary paperwork, and that it was also a "strategic move" to force her to quit, Sanchez requested to speak with a higher-level supervisor. *See id.* ¶¶ 5.5; 8.2; *see also* Sanchez Aff. ¶¶ 23, 25. In response, Muldau "proceeded to threaten [or] try to intimidate" Sanchez by inquiring whether she was sure she "want[ed] to go down that road with [Muldau]," to which Sanchez replied that he had given her "no choice." *Id.* Muldau, according to Sanchez, was "messing with [her] life by disrupting [her] schedule and moving [her] from [a] shift that [she] earned . . . without any just cause." *Id.*

On or about August 30, 2019, Sanchez—in the presence of Muldau and Rogers—met with the next-level supervisor Captain Schuler. *See id.* ¶ 5.6. During this meeting, Schuler referenced the staff-related complaints lodged against Sanchez but refused Sanchez's request to see them. *See id.* Shortly after the meeting, on or about September 4, 2019, Schuler "decided to go a different way and move[d] [Sanchez] completely out of dispatch and put her on Administrative Leave without stating a reason." *Id.* ¶ 5.7.

---

[3] *See* 1st Amend. Compl. at 8 n. 4 (incorporating Sanchez Affidavit by reference).

In November 2019, the BCSO served Sanchez with a Notice of Proposed Demotion, which was the subject of a "*Loudermill* hearing" in December 2019. *See id.* ¶ 5.8. Shortly thereafter, Schuler offered to reduce the proposed demotion to a 10-day suspension. Sanchez declined. *See id.* ¶ 5.9. The BCSO upheld Schuler's demotion decision on February 14, 2020, and then again on March 12, 2020. *See id.* ¶¶ 5.10-11. A few days later, the BCSO took Sanchez's work cell phone and laptop, which Sanchez contends constituted a "De Facto termination." Sanchez Aff. ¶ 28. Rather than accept the accompanying decrease in pay and fringe benefits, as well as what Sanchez believed would be inevitable scrutiny and hostile work environment by management that "had already lied to get her demoted," Sanchez opted to retire and contend that the aforementioned actions amount to a constructive discharge. *See* 1st Amend. Compl. 5.12; Sanchez Aff. ¶ 28.

Sanchez's live Complaint raises claims against the County for (1) sex and race/color discrimination and retaliation in violation of Title VII; (2) "hostile work environment/constructive discharge" in violation of Title VII; (3) age discrimination in violation of the ADEA; and (4) "constructive discharge." 1st Amend. Compl.

**Analysis**

This case should be dismissed for many of the same reasons as those discussed in the District Court's March 30, 2021, Order. Sanchez has again failed to plead sufficient facts to plausibly suggest she suffered from age, race, religious,[4] or sex-related discrimination, suffered retaliation because she engaged in a protected activity, or was subject to a hostile work environment. Sanchez has also forfeited any due process, equal protection, and ADA claims by

---

[4] Although Sanchez fails to separately plead a cause of action for religious discrimination, her live Complaint references the BCSO's alleged attempts to interfere with her religious activities. Accordingly, out of an abundance of caution, the Court will evaluate the merits of any such claim.

omitting these claims from her live Complaint. Even if such claims were properly before the Court, they would be insufficient as pleaded.

      A.      **Sanchez Fails to Plead Viable Title VII Discrimination Claims.**

Title VII creates distinct theories for disparate treatment and disparate impact. *See Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin." *Id.* Accordingly, discrimination requires proof and a finding of discriminatory motive. *Id.* "Disparate-impact discrimination, on the other hand, addresses employment practices or policies that are facially neutral in their treatment of these protected groups, but, in fact, have a disproportionately adverse effect on such a protected group." *Id.* Under this second theory of liability no discriminatory motive is necessary. *Id.*

Here, Sanchez appears to raise both theories. First, she claims that "male and other members outside of her protected class were treated more favorably notwithstanding their lack of seniority. 1st Amend. Compl. ¶¶ 6.11(d); 6.12(d). Specifically, Sanchez alleges that these employees received "new or better equipment, more training opportunities and ultimately another member outside of the protected class received the promotion with less seniority and less qualifications." *Id.* Second, Sanchez alleges that the BCSO followed facially neutral policies that in practice "serve[d] to discriminate against a disproportionate number of persons of plaintiff's sex and age." *Id.* ¶ 6.6. Sanchez's conclusory allegations are insufficient to satisfy Rule 8(a)'s pleading requirements under either a disparate-impact or disparate-treatment theory.

            1.     *Sanchez hasn't plausibly pleaded a viable disparate-treatment claim.* A plaintiff raising a disparate-treatment claim must plead sufficient facts to plausibly suggest she suffered an adverse employment action and that the action was taken "*because of* her protected

status." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (quotations omitted, emphasis in original). For purposes of a Title VII disparate-treatment claim, an employer acts "because of" a protected characteristic where the characteristic was at least a "motivating factor" in the adverse employment action. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). Adverse employment actions, however, include "only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019). "An employment action that does not affect job duties, compensation, or benefits' is not an adverse employment action." *Id.* (quotations and brackets omitted). Here, Sanchez has failed to allege sufficient facts to "nudge [her] claims [of sex, race, and religion discrimination] across the line from conceivable to plausible." *Cicalese*, 924 F.3d at 768 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

To start, the majority of the alleged employment events at issue—such as Muldau's dismissive attitude towards Sanchez, the never-implemented shift change proposal, temporary curtailment of Sanchez's supervisory responsibilities, and the general criticisms of Sanchez and encouragement to retire—don't rise to the level of adverse employment actions, as the District Court previously held in this case. *See* Dkt. No. 9 at 10-11. The same is true with respect to any alleged denial of training opportunities or provision of better office equipment. *See, e.g.*, *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir. 1999) (lack of training not actionable under Title VII); *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 911, 912 (7th Cir. 2002) (denial of "better" equipment not actionable). Moreover, Sanchez's perfunctory reference to an unspecified promotion that another employee outside the protected class with "less seniority and less qualifications" allegedly received is insufficient. Sanchez

doesn't identify the promotion at issue, whether she was qualified for it, or even whether she applied for it. *See Twombly*, 550 U.S. at 547.

Accordingly, Sanchez only claims to have suffered two potential adverse employment actions—her demotion and her subsequent alleged constructive discharge.[5] Sanchez, however, has failed to plead any facts to plausibly suggest that the BCSO demoted or constructively discharged her *because of* her race, sex, or religion.

To survive a motion to dismiss, Sanchez must identify more than her subjective belief that she was discriminated against; she must describe specific facts that support her claim that the BCSO acted in an unlawfully discriminatory manner. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (to survive a motion to dismiss, the allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully"). Sanchez hasn't done so here. She points to stray remarks allegedly made by Muldau and Rogers approximately six months before the adverse employment action. These remarks are *untied* to Sanchez's protected status, Muldau's alleged preference for male supervisors, and Rogers's alleged knowledge that Sanchez worshipped on Sundays. Such isolated instances are insufficient to plausibly infer a causal connection between Sanchez's demotion or constructive discharge and any alleged discriminatory animus.[6] Even if Sanchez had plausibly pleaded that Muldau or Rogers possessed

---

[5] Constructive discharge, however, is not a free-standing claim as Sanchez alleges. *See Wells v. City of Alexandria*, No. 03-30750, 2004 WL 909735, at *3 (5th Cir. Apr. 29, 2004). Rather, it is an alternative way of proving an adverse employment action where a plaintiff quits instead of being fired. *See id.* Such an alternative mechanism is unnecessary where, as is the case here, the parties agree that Sanchez was demoted. In any event, "[c]onstructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Keelan v. Majesco Software, Inc*., 407 F.3d 332, 342 (5th Cir. 2005) (quotations omitted). Because Sanchez's hostile-work-environment claim fails (as discussed below), so too must her constructive-discharge claim.

[6] *See, e.g*., *Moody v. U.S. Sec'y of Army*, 72 Fed. Appx. 235, 239 (5th Cir. 2003) ("For comments in the workplace to provide sufficient evidence of discrimination, they must be 1) related to the

discriminatory animus, Sanchez doesn't pleaded that *the decisionmaker* Schuler was motivated by a discriminatory animus. Nor does Sanchez plead that Muldau exerted any influence over Schuler's decision or even that Rogers informed either Muldau or Schuler about Sanchez's religious affiliation. Indeed, according to Sanchez, Schuler "decided to go a different way" from the shift change proposed by Muldau. 1st Amend. Compl. ¶ 5.7.

Finally, the mere fact that the BCSO may have departed from certain procedural requirements set forth in the BCSO civil service rules—without more— doesn't plausibly suggest it did so *because of* Sanchez's race, sex, or religion.[7] Notably, Sanchez doesn't identify a single similarly situated non-Hispanic male employee outside her religious affiliation who was treated more favorably. Instead, Sanchez claims that unidentified male employees and "other members outside of her protected class" were "treated more favorably even though they had less seniority, were provided or issued new or better equipment, more training opportunities and ultimately another member outside of the protected class received the promotion with less seniority and less qualifications." 1st Amend. Compl. ¶ 6.11(d), 6.12(d). She doesn't identify the race or religious affiliation of any of these putative comparator employees. Nor does Sanchez allege that these individuals shared the same job duties, supervisors, or violation histories such that they might be comparators. *See Morris v. Town of Indep.*, 827 F.3d 396, 401 (5th Cir. 2016)

---

protected class of persons of which the plaintiff is a member; 2) proximate in time to the employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.") (quotations and brackets omitted); *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996) ("To be probative of discrimination, isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process.").

[7] *See, e.g.*, *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (to "raise [a] right to relief above the speculative level," a plaintiff's complaint must allege "facts, direct or circumstantial, that would suggest [the defendant's] actions were based on [plaintiff's protected traits] or that [the defendant] treated similarly situated employees [outside the protected class] more favorably.").

(discussing when an individual can be considered a comparator for purposes of Title VII). Accordingly, Sanchez's conclusory allegations regarding the BCSO's treatment of other unidentified employees are insufficient to plead a circumstantial link between Sanchez's demotion or alleged constructive discharge and Sanchez's membership in a protected class. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 471 (5th Cir. 2016) (affirming Rule 12(b)(6) dismissal of Title VII claim for failure to sufficiently plead existence of comparator employee).

      **2.**    *Sanchez's disparate-impact claim similarly fails*. Sanchez's conclusory allegation that the BCSO's policies served to discriminate against "a disproportionate number of persons of plaintiff's sex and age"[8] is insufficient to raise a plausible claim for relief beyond the speculative level under Title VII. To start, Sanchez hasn't identified a single person, besides herself, who allegedly was affected by such policies. She also fails to identify the challenged employment policy or explain how the challenged policies disparately impacted a protected class. *See Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 813 (5th Cir. 1996) (providing that to prevail on a disparate-impact claim, a plaintiff must "isolate and identify a particular employment practice which is the cause of the disparity and provide evidence sufficient to raise an inference of causation"). Accordingly, Sanchez's disparate-impact claim must be dismissed. *See, e.g.*, *Anderson v. Gen. Motors, LLC*, No. 4:17-CV-672-A, 2017 WL 5891804, at *5 (N.D. Tex. Nov. 28, 2017) (noting, "the allegation that defendant's policies disparately impacted people in her Title VII protected class is insufficient, as she has provided no factual information to support that claim").

---

[8] 1st Amend. Compl. ¶ 6.6.

### B. Sanchez Fails to Plead a Viable Title VII Retaliation Claim.

Sanchez's Title VII retaliation claim is also subject to dismissal. "To survive a Rule 12(b)(6) motion, a plaintiff alleging Title VII retaliation must plead facts showing: (1) that [she] engaged in [protected] activity ..., (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Cuellar v. Sw. Gen. Emergency Physicians, P.L.L.C.*, 656 F. App'x 707, 709 (5th Cir. 2016) (quotations omitted). Here, although Sanchez conclusorily contends that she "engaged in protected conduct and opposed unlawful conduct" but was "illegally investigated and her duties altered," 1st Amend. Compl. ¶ 6.13, she never explains what protected conduct she engaged in or how she "opposed unlawful conduct." At most, Sanchez appears to allege that she complained about the BCSO's alleged failure to follow its internal procedures by commencing disciplinary action without any prior disciplinary paperwork. *See id.* ¶ 5.5. But "Title VII protects an employee only from 'retaliation for complaining about the types of discrimination it prohibits." *Brackens v. Stericycle, Inc* 829 F. App'x 17, 21 (5th Cir. 2020). The only Title VII protected activities that are discernable from the record are Sanchez's filing of her EEOC charge and this lawsuit—activities that occurred only after her demotion and alleged constructive discharge. Accordingly, Sanchez's Title VII retaliation claim should be dismissed.

### C. Sanchez Fails to Plead a Viable Hostile-Work-Environment Claim.

Unlike Sanchez's discrimination claim, a hostile-work-environment claim generally results from discrimination that does not culminate in a tangible or adverse employment action. *Williams v. Admin. Review Bd.*, 376 F.3d 471, 476 (5th Cir. 2004). "A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment.'" *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). "For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). "Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. *Id.*

To support her hostile-work-environment claim, Sanchez relies on a few incidents of name calling untethered to her protected status, Muldau's alleged failure to treat her with respect compared to treatment of younger male supervisors on a few unspecified occasions, and Rogers' comments encouraging Sanchez to retire or find another job. Isolated offhand comments, discourtesy, and rudeness of this sort don't rise to the level of severe or pervasive conduct. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999) ("Discourtesy or rudeness, 'offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in 'terms and conditions of employment.'") (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Similarly, a proposal to change Sanchez's shift, temporary curtailment of her supervisory authority, and failure to provide Sanchez with direction for "several months" isn't objectively hostile or abusive. Title VII is not a "general civility code that provides for the ordinary tribulations of the workplace." *Faragher*, 524 U.S. at 788 (quotations omitted).

In her Response to the BCSO's Motion to Dismiss, Sanchez argues that she has shown a hostile work environment by alleging "physical[] harass[ment]" and the "removal of Defendant's property." Dkt. No. 21 (Resp.) at 7. But Sanchez's live Complaint doesn't allege that any

employee or agent of the BCSO made physical contact with her, and the only removal of property that she alleges involved a County-issued cell phone and laptop taken when she was placed on administrative leave. *See* Sanchez Aff. ¶ 28. Accordingly, Sanchez has failed to plead that the alleged harassment was sufficiently severe or pervasive. In any event, even if the aforementioned conduct were actionable, Sanchez hasn't pleaded any facts plausibly suggesting that the alleged harassment was based on her sex, religion, or race. *See WC&M Enters.*, 496 F.3d at 399 (providing that to state a viable hostile-work-environment claim under Title VII, a plaintiff must show that the harassment was "based on a protected characteristic").

### D. Sanchez Fails to Plead a Viable ADEA Claim.

Sanchez's ADEA claim should also be dismissed. Although Sanchez doesn't have to plead a *prima facie* case of age discrimination, she must plead sufficient facts on all elements of a disparate-treatment claim to make her case plausible. *Chhim*, 836 F.3d at 470. Unlike in the Title VII context, the ADEA requires Plaintiff to meet the more demanding "but-for" standard of proof. *Leal v. McHugh*, 731 F.3d 405, 411 (5th Cir. 2013). The *McDonnell Douglas* framework serves as a helpful framework to determine whether Sanchez has pleaded a plausible claim where, as is the case here, Sanchez attempts to prove age discrimination through circumstantial evidence. *Chhim*, 836 F.3d at 470; *see also Flores v. Select Energy Servs., L.L.C.*, 486 Fed. App'x 429, 432 (5th Cir. 2012). To state a *prima facie* case of age discrimination, a plaintiff must allege facts showing that she: (1) is at least 40 years old; (2) has suffered an adverse employment action; (3) is qualified for the position and has suffered an adverse employment action; (4) and was replaced by, or was treated less favorably than, someone similarly situated and younger. *Leal*, 731 F.3d at 410-411. Here, Sanchez has failed to plead any facts plausibly suggesting that she was demoted or constructively discharged because of her age.

In support of her ADEA claim, Sanchez alleges that:

> Younger members outside of her protected class were treated more favorably even though they had less seniority were provided [or] issued new or better equipment, more training opportunities and ultimately another remember outside of the protected class received the promotion with less seniority and less qualifications. Employer, Bexar County hired an individual [Ebony Jones] who was in her mid-twenties and for lower pay than the plaintiff.

1st Amend. Compl. ¶ 7.9(d). Such conclusory allegations are insufficient. Sanchez doesn't plead any facts suggesting that either Ebony Jones or any of the unnamed putative comparators are similarly situated to Sanchez. For example, Sanchez doesn't identify these employees' job responsibilities, explain whether or not they were also supervised by Muldau and Rogers or demoted by Schuler, or discuss—even briefly—their performance histories. *See Hinga v. MIC Grp., LLC*, 609 F. App'x 823, 827 (5th Cir. 2015) (explaining how an individual qualifies as a comparator under the ADEA). Indeed, as pleaded, Jones can't be similarly situated to Sanchez because Sanchez concedes that the BCSO hired her at a *lower* rate of pay. Moreover, Sanchez hasn't pleaded facts linking the hiring of Jones to Sanchez's own demotion or alleged constructive discharge.

For these reasons, Sanchez's ADEA claim is subject to dismissal.

### E.   Sanchez Forfeited Her ADA, Due Process, and Equal Protection Claim.

Finally, unlike her original Petition, Sanchez's live Complaint fails to allege claims under the ADA or for violation of her rights to due process and equal protection.[9] Nevertheless, Sanchez includes arguments in support of these claims in her Response to the County's

---

[9] Sanchez's passing reference to her various health-related ailments and conclusorily statement in an introductory section entitled "Statement of the Case" that the County violated her rights to due process and equal protection as a county employee are insufficient.

Amended Motion to Dismiss. Because Sanchez's amended complaint superseded her original Petition,[10] Sanchez has forfeited these claims.

Even if these claims were properly before the Court, they would still be subject to dismissal for much the same reasons as those previously discussed by the District Court. Sanchez hasn't pleaded any facts plausibly suggesting that BCSO took an adverse employment action against her because of her disability. Indeed, as pleaded, only Rogers—not the decisionmaker Schuler—was aware of Sanchez's various medical conditions.

With respect to a due process claim, Sanchez hasn't alleged that she has a property interest in her employment. The mere fact that Sanchez was a public employee is insufficient. *See Muncy v. City of Dallas, Tex.*, 335 F.3d 394, 398 (5th Cir. 2003) (citing *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). Nor has Sanchez provided sufficient facts to reflect that the County acted arbitrarily or capriciously or that she was denied a fair hearing. The BCSO's mere failure to comply with its own internal policies does not amount to a due process violation, provided constitutional minima regarding notice and other due process protections are met.[11] Here, Sanchez concedes she was notified of the complaints against her, attended various meetings at which she discussed the complaints with her supervisors, was served with a notice of demotion, and was afforded a so-called *Loudermill* hearing. *See Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003) ("The essential requirements of procedural due process

---

[10] *See* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1483 (3d ed. 2021).

[11] *See, e.g.*, *Brown v. Texas A & M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986) ("The University's admitted failure to comport with its internal pretermination procedures does not by itself amount to a violation of the Due Process Clause. The failure of a state agency to comply with its internal regulations is insufficient as a matter of law to establish a violation of Due Process, because constitutional minima nevertheless may have been met."); *Levitt v. Univ. of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985) (There is not a violation of due process every time a . . . government entity violates its own rules.").

under the Constitution are notice and an opportunity to respond."). Accordingly, Sanchez has failed to plead a viable claim for the denial of due process.

Finally, insofar as Sanchez alleges an equal protection claim based on the same facts that she pleaded in support of her Title VII or ADEA claims, the equal-protection claim should be dismissed for the same reasons set forth above. *See Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009) "[D]iscrimination claims, including hostile work environment claims, brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, are subject to the same standards of proof and employ the same analytical framework."). Regardless, because employment decisions "by their nature involve discretionary decisionmaking based on a vast array of subjective individualized assessments," they are not generally amenable to a so-called class-of-one equal protection claim. *See also Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 587 (5th Cir. 2016).

### F. Further Leave to Amend Should Be Denied.

Although Sanchez maintains that her First Amended Complaint sets forth sufficient facts to state plausible claims for relief, she alternatively seeks leave to amend her complaint should the Court again find it deficient. *See* Resp. at 14. Courts generally permit amendment of a pleading following dismissal of a claim on pleading sufficiency grounds, but permitting further amendment is not required where, as is the case here, a plaintiff has already amended her complaint and in so doing failed to correct pleading deficiencies brought to the plaintiff's attention, or where the proposed amendment would be futile. *See Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). A proposed amendment "is futile if it would fail to survive a Rule 12(b)(6) motion[,]" and "a bare bones motion to amend remains futile when it fail[s] to apprise the district court of the facts that he would plead in an amended

16

complaint." *Id.*; *Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (internal quotation marks omitted).[12]

Here, the District Court already issued a lengthy Order identifying the deficiencies in Sanchez's original Petition and provided her an opportunity to cure them. Sanchez subsequently filed an amended complaint that largely repeats those deficiencies. Moreover, in lodging her alternative request to amend, Sanchez doesn't identify any new facts that would make her claims viable or correct the pleading deficiencies identified in the County's amended Motion to Dismiss. Accordingly, the District Court should exercise its discretion and decline to provide Sanchez a further opportunity to amend.

### Conclusion and Recommendation

For the reasons discussed above, it is recommended that Bexar County's Motion to Dismiss, Dkt. No. 17, be **GRANTED** and this case be **DISMISSED**.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is

---

[12] *See also* Local Rule CV-7(b) ("When a motion for leave to file a pleading, motion, or other submission is required, an executed copy of the proposed pleading, motion, or other submission shall be filed as an exhibit to the motion for leave").

modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 24th day of January, 2022.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE